UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY KIDWELL CORR,<br><br>          Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE, COMMISSIONER<br>OF SOCIAL SECURITY ADMINISTRATION,<br><br>          Defendant. | NO. ED CV 11-7890-E<br><br>**MEMORANDUM OPINION**<br><br>**AND ORDER** |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that the decision of the Commissioner of the Social Security Administration is reversed and the matter is remanded for the immediate calculation and payment of benefits.

**PROCEEDINGS**

Plaintiff filed a complaint on September 23, 2011, seeking review of the Commissioner's denial of disability benefits. The parties filed a consent to proceed before a United States Magistrate Judge on October 27, 2011. Plaintiff filed a motion for summary judgment on

March 19, 2012.  Defendant filed a cross-motion for summary judgment on April 18, 2012.  The Court has taken the motions under submission without oral argument.  See L.R. 7-15; "Order," filed September 26, 2011.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff asserts disability based on heart problems (A.R. 140-46, 157-58).  Plaintiff testified to symptoms of allegedly disabling severity (A.R. 39-70).  Plaintiff's former roommate gave potentially corroborating testimony (A.R. 71-88).

The Administrative Law Judge ("ALJ") found Plaintiff not disabled (A.R. 28-35).  The ALJ determined that Plaintiff suffers from the following severe impairments: "status post AICD (Automatic Implantable Cardiac Defibrillator) cardioversion, probable episode of atrial flutter and ventricular tachycardia, tricuspid atresia, status post fontan with lateral tunnel, and status post pacer AICD with history of atrial flutter" (A.R. 30).  Plaintiff's treating physicians opined that Plaintiff's cardiac impairments reduce Plaintiff's functional capacity well below the capacity necessary to sustain substantial gainful activity (A.R. 350-51, 469-70).  The ALJ disagreed with these opinions (A.R. 30-31).  According to the ALJ, Plaintiff retains the capacity to perform "light work" except that Plaintiff can stand or walk only two hours in an eight-hour workday, can perform postural activities only occasionally, cannot crawl, cannot climb ladders, ropes, or scaffolds, cannot be exposed to extreme temperatures, cannot work around heights or around hazardous equipment, and cannot be

2

exposed to concentrated dust, fumes, and gases (A.R. 30-31).[1] With these limitations, according to the ALJ, Plaintiff could perform jobs existing in the national economy including cashier II, food and beverage order clerk, and telephone quotation clerk (A.R. 35 (adopting vocational expert testimony at A.R. 89-90)).

The ALJ deemed Plaintiff's testimony not credible to the extent the testimony was inconsistent with the ALJ's residual functional capacity determination (A.R. 31, 33). The ALJ also deemed not credible the lay witness observations of Plaintiff's former roommate, to the extent those observations were inconsistent with the ALJ's residual functional capacity determination (A.R. 33-34). The Appeals Council denied review (A.R. 1-4).

///
///
///
///

---

[1] Light work involves lifting and carrying no more than 20 pounds occasionally and 10 pounds frequently. See 20 C.F.R. § 416.967(b). Although the ALJ described Plaintiff as having the residual functional capacity to perform a limited range of light work, the vocational expert testified that a person with the residual functional capacity the ALJ described would be limited to sedentary work due to the standing and walking limitation (A.R. 89). Social Security Ruling 83-10 instructs that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." See SSR 83-10; see also Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990) (Social Security rulings are binding on the Administration). "[A]t the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." See SSR 83-10.

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006).

Where, as here, the Appeals Council considered additional material but denied review, the additional material becomes part of the Administrative Record for purposes of the Court's analysis. See Harman v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir.), cert. denied, 531 U.S. 1038 (2000) (reviewing court properly may consider materials submitted to the Appeals Council when the Appeals Council addressed the materials in denying review); Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993) ("although the Appeals Council declined to review the decision of the ALJ, it reached this ruling after considering the case on the merits; examining the entire record, including the additional material; and concluding that the ALJ's decision was proper and that the additional material failed to provide a basis for changing the hearing decision. For these reasons, we consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council") (citations and quotations omitted); Penny v.

Sullivan, 2 F.3d 953, 957 n.7 (9th Cir. 1993) ("the Appeals Council considered this information and it became part of the record we are required to review as a whole"); see generally 20 C.F.R. §§ 404.970(b), 416.1470(b).

**DISCUSSION**

Plaintiff contends, inter alia, that the ALJ erred in the ALJ's evaluation of certain opinions rendered by Plaintiff's treating physicians, and that substantial evidence does not support the ALJ's residual functional capacity assessment. See Plaintiff's Motion at 4-9. For the reasons discussed below, the Court agrees.

**I.  Summary of Relevant Portions of the Medical Record.**

Plaintiff was born with heart defects, which have required 22 cardiac interventions or surgical procedures dating back to infancy (A.R. 492). Dr. L. Stephen Gordon, a cardiologist, has treated Plaintiff since birth. See A.R. 326-41, 357-65, 371-96, 438-40, 447-48, 459-66, 474-80, 488-92, 494-567, 572-78, 580-86, 588-94, 607, 622-32, 643-44, 664-73, 681-86, 692-723 (treatment and surgical records).

Dr. Gordon completed a Cardiac Impairment Questionnaire for Plaintiff dated April 23, 2008 (A.R. 467-72). Dr. Gordon gave Plaintiff a "guarded" prognosis, stating that Plaintiff suffers from chest pain, shortness of breath, fatigue, weakness, edema, palpitations, dizziness, and sweatiness (A.R. 467). Dr. Gordon based his impressions on "laboratory and diagnostic test results" consisting

of echocardiograms, cardiac catheterizations, x-rays, and electrocardiograms (A.R. 468). Dr. Gordon opined that Plaintiff could occasionally lift up to 10 pounds, could not carry any weight, could sit only two hours in an eight-hour workday, and could stand/walk only one hour or less in an eight-hour workday (A.R. 469-70). Dr. Gordon indicated that Plaintiff would be absent from work more than three times per month due to Plaintiff's medical condition (A.R. 470).

Dr. Thomas E. Miles, Jr., is an internist who has treated Plaintiff since July 2002. See A.R. 399-401, 687-90 (treatment records).[2] Dr. Miles completed a Cardiac Impairment Questionnaire for Plaintiff dated December 20, 2007 (A.R. 348-53). Dr. Miles stated that Plaintiff suffers from chest pain, shortness of breath, fatigue, palpitations, and dizziness (A.R. 348). Dr. Miles gave Plaintiff a "guarded" prognosis, and opined that Plaintiff's symptoms would increase if Plaintiff were placed into a competitive work environment (A.R. 348, 350; see also A.R. 354, 369 (letters describing Plaintiff as "very thin" and "frail" and stating that Plaintiff is limited in terms of his physical activity), 569 (letter noting Plaintiff is limited to "only light physical activity"), 679 (letter opining Plaintiff cannot perform full-time competitive work because of cardiac disease). Dr. Miles opined that Plaintiff could occasionally lift 20-50 pounds, frequently lift 5-10 pounds, occasionally carry 10-20 pounds, frequently carry 5-10 pounds, sit no more than four hours in an eight-hour workday, and stand/walk no more than two hours in an eight-hour workday (A.R. 350-51; see also A.R. 369). Dr. Miles also

---

[2] Dr. Gordon copied Dr. Miles on Dr. Gordon's treatment records.

6

indicated that Plaintiff would be absent from work "about" two or three times per month due to Plaintiff's medical condition (A.R. 351).

Nonexamining state agency physician, Dr. Rosa Halpern, completed a Physical Residual Functional Capacity Assessment form for Plaintiff dated October 25, 2007 (A.R. 342-47). Dr. Halpern did not review any treating source statements (A.R. 347). Dr. Halpern opined that Plaintiff would be capable of occasionally lifting and carrying 20 pounds, frequently lifting and carrying 10 pounds, unlimited pushing/pulling, standing and/or walking at least two hours in an eight-hour workday, and sitting about six hours in an eight-hour workday (A.R. 343). Dr. Halpern stated:

> Claimant with history of heart problems, he has a history of atrial flutter and tachycardia with AICD placement. In late 2005/early 2006, claimant received two shocks for supra ventricular tachycardia at heart rates of 240. His cardiac exam is consistently the same from records in 2006 to the present – there is a loud valve click, grade 2/6 systolic ejection murmur and a grade 3/6 blowing diastolic murmur at the base of the heart. Most recent EKG showed nonspecific ST and T wave changes with left ventricular hypertrophy. Echocardiograms show tricuspid atresia with transposition, mild aortic valve regurgitation, normal ventricular function. Stress echo done 2/13/2007 showed single ventricle physiology [status post] Fontan operation, and possible mild ischemic changes. [T]here is a prosthetic mitral valve[.]

(A.R. 342-43).  Dr. Halpern opined that Plaintiff could occasionally climb, balance, stoop, kneel, and crouch, but never crawl, and stated that Plaintiff should avoid concentrated exposure to extreme cold and heat, fumes, odors, dusts, gases, poor ventilation, and hazardous machinery (A.R. 345-46).

**II.   The ALJ Erred in His Evaluation of the Medical Evidence and in His Determination of Plaintiff's Residual Functional Capacity.**

In determining Plaintiff's residual functional capacity, the ALJ purportedly relied on the opinion of nonexamining state agency physician, Dr. Halpern, and purported to give only "limited weight" to the opinions of the treating physicians, Drs. Miles and Gordon.  The ALJ explained:

> I accord limited weight to the opinions of Dr. Miles and Dr. Gordon.  They essentially limit the claimant to a very limited range of less than sedentary work or work that entails less than eight hours a day.  Their opinions are contradicted by the claimant's actual ability to do things such as play guitar on gigs, live alone, and traveled [sic]

///
///
///
///
///
///
///

8

to Phoenix by car to attend a concert.[3] Moreover, the claimant had ejection fractions in the normal range. The claimant's regular follow up of his heart generally showed no significant changes. In February 2007 he achieved a METs score of 10.1. Dr. Miles noted that the claimant had been exercising more since his December 2008 surgery. In January 2009 there was no evidence of deep vein thrombosis. The claimant weighed 132 pounds. A January 2009 echocardiogram showed that the claimant's overall ventricular function appeared good. In June 2009 Dr. Gordon stated that the claimant was asymptomatic. Based on the above factors, I

---

[3] Plaintiff testified that he had played 20-minute coffee shop gigs with his acoustic guitar for a period of time, but had not played for a couple of years (A.R. 52-53, 60). Plaintiff had started a band with friends but the band had not "really done anything" (A.R. 51-52). Plaintiff testified that if he wanted to do something like play 30 minutes somewhere, he would suffer consequences for the next couple of days, if not weeks, because his body does not "enjoy" these things (A.R. 67).

Plaintiff's former roommate, Robert Hallback, testified that Plaintiff has a band and practices "maybe" an hour, total, with breaks, and that the performances last anywhere from 30 minutes to an hour (A.R. 83). Plaintiff reportedly would turn blue when he performs and had been defibrillated on stage and rushed to a hospital (A.R. 84). Hallback said that Plaintiff usually knocks himself off his feet for the next couple of days when he does any strenuous activity (A.R. 85-86). Hallback said that he drove Plaintiff six to eight hours to a concert in Phoenix once and had to stop four or five times for food and restroom breaks (A.R. 88).

The only evidence concerning Plaintiff's reported daily activities appears in his Disability Report forms, in which Plaintiff reported that he is unable to care for his personal needs (A.R. 172, 184). Plaintiff had been living alone for a few months in his father's rental house at the time of the hearing (A.R. 40).

1 find that the opinions of Dr. Miles and Dr. Gordon merit
2 less weight.  I find that Dr. Halpern's opinion is more
3 consistent with the overall evidence.

A.R. 33 (internal citations to the medical record omitted).

A treating physician's conclusions "must be given substantial weight." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988); see Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) ("the ALJ must give sufficient weight to the subjective aspects of a doctor's opinion . . . This is especially true when the opinion is that of a treating physician") (citation omitted); see also Orn v. Astrue, 495 F.3d 625, 631-33 (9th Cir. 2007) (discussing deference owed to treating physician opinions); see generally 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Even where the treating physician's opinions are contradicted,[4] "if the ALJ wishes to disregard the opinion[s] of the treating physician he . . . must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987) (citation, quotations and brackets omitted); see Rodriguez v. Bowen, 876 F.2d at 762 ("The ALJ may disregard the treating physician's opinion, but only by setting forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence") (citation and quotations omitted).

---

[4] Rejection of an uncontradicted opinion of a treating physician requires a statement of "clear and convincing" reasons. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984).

The ALJ's residual functional capacity determination effectively rejected the opinions of Drs. Miles and Gordon without stating legally sufficient reasons for doing so. As summarized above, the ALJ relied, in part, on Plaintiff's daily activities (A.R. 33). A material inconsistency between a treating physician's opinion and a claimant's admitted level of daily activities can furnish a specific, legitimate reason for rejecting the treating physician's opinion. See, e.g., Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001). Contrary to the ALJ's suggestion, however, the fact that Plaintiff was able to play brief guitar gigs, live alone, and travel one time to Phoenix by car (with frequent stops) is not necessarily inconsistent with an inability to sit for more than four hours in an eight-hour workday or to stand/walk for more than two hours in an eight-hour workday. Plaintiff's admitted activities are also not inconsistent with having to miss two or more days of work per month due to his medical issues, or with an inability to engage in sustained activity in a work setting on a regular and continuing basis for eight hours a day, five days a week. See SSR 96-8p (defining scope of residual functional capacity). Significantly, the vocational expert testified that a person with the residual functional capacity the ALJ found to exist (which assumes greater capacity than the treating physicians found) but who would be absent from work, unscheduled, two to three times per month, could not sustain employment (A.R. 90-91).

Like Plaintiff's admitted activities, the ALJ's characterizations and interpretations of particular medical test results cannot constitute "specific, legitimate" reasons for rejecting the opinions of the treating physicians. The ALJ stated that Plaintiff has

11

ejection fractions in a "normal" range, once achieved a METs score of 10.1, has no evidence of deep vein thrombosis, has an echocardiogram that showed overall ventricular function as "good," and once was reportedly "asymptomatic."  The record contains no expert medical opinion interpreting these test results in any manner so as to impugn the treating physicians' opinions regarding Plaintiff's functional capacity.  Dr. Gordon recorded each of these test results (along with others) and provided his records to Dr. Miles, but each of these physicians concluded that Plaintiff has greater limitations than the limitations the ALJ found to exist.  See A.R. 337-38, 363, 365, 382-83, 398, 488, 490, 588 (cited medical records).  No physician of record ever discussed how the specific evidence the ALJ cited supposedly proves a greater functional capacity than the treating physicians found to exist.

It is well-settled that an ALJ may not render his or her own medical opinion or substitute his or her own diagnosis for that of a claimant's physician.  See Tackett v. Apfel, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ erred in rejecting physicians' opinions and finding greater residual functional capacity based on claimant's testimony about a road trip; there was no medical evidence to support the ALJ's residual functional capacity finding determination); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his own medical assessment beyond that demonstrated by the record); Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion") (internal quotation marks and citation omitted); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to

1  the temptation to play doctor and make their own independent medical
2  findings").  If the ALJ suspected that the cited test results or other
3  medical evidence pointed toward a greater functional capacity than the
4  treating physicians found to exist, the ALJ should have consulted a
5  qualified medical expert to attempt to confirm or dispel the ALJ's
6  suspicion.  See id.

8      Dr. Halpern's opinion could not furnish substantial evidence to
9  support the ALJ's rejection of the treating physicians' opinions.  Dr.
10 Halpern's opinion predated all of the opinions of record from
11 Plaintiff's treating physicians, and Dr. Halpern did not base her
12 opinion on any independent clinical findings.  Where, as here, "a
13 nontreating physician's opinion contradicts that of the treating
14 physician – but is not based on independent clinical findings, or
15 rests on clinical findings also considered by the treating physician –
16 the opinion of the treating physician may be rejected only if the ALJ
17 gives specific legitimate reasons for doing so that are based on
18 substantial evidence in the record."  Morgan v. Commissioner of Social
19 Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).  Thus, the
20 opinion of a nonexamining physician, by itself, is insufficient to
21 constitute substantial evidence to reject the opinion of a treating or
22 examining physician.  See Widmark v. Barnhart, 454 F.3d 1063, 1067
23 n.2 (9th Cir. 2006) (citing Lester v. Chater, 81 F.3d 821, 831 (9th
24 Cir. 1995)).

26     Finally, Defendant argues that "the opinions of Drs. Gordon and
27 Miles that Plaintiff could not work is [sic] a legal opinion reserved
28 for the Commissioner" (Defendant's Motion at 6).  Although the

13

ultimate issue of disability is reserved to the Administration, the ALJ still must set forth specific, legitimate reasons for rejecting a treating physician's opinion that a claimant is disabled. See Rodriguez v. Bowen, 876 F.2d at 762 n.7 ("We do not draw a distinction between a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability.").

In sum, the ALJ rejected the opinions of Drs. Gordon and Miles without stating "specific, legitimate reasons" therefor, and thereby arrived at a residual functional capacity determination unsupported by substantial evidence.

**III. Reversal for An Award of Benefits is Appropriate.**

When there exists error in an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). When the error is the improper rejection of medical opinion evidence, however, the Ninth Circuit has instructed that such evidence should be credited and an immediate award of benefits directed where: "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S. 1038 (2000) (citations

///

and quotations omitted) ("Harman").[5]

In the present case, application of the Harman rule requires reversal for an immediate award of benefits. As discussed above, the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Drs. Gordon and Miles. If Dr. Gordon's and Dr. Miles' opinions concerning Plaintiff's limitations were fully credited, the ALJ clearly would be required to find Plaintiff disabled. There are no outstanding issues to be resolved before a disability determination may be made. Under the circumstances of this case, the law does not require the Court to afford the Administration a second opportunity to address the improperly rejected medical opinions. See Harman, 211 F.3d at 1179; see also Benecke v. Barnhart, 379 F.3d at 595 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication. . . . Remanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand") (citations and quotations omitted).

///
///
///

---

[5] The Ninth Circuit has continued to apply Harman subsequent to INS v. Ventura. See Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010); Vasquez v. Astrue, 572 F.3d 586, 597 (9th Cir. 2009); Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

**CONCLUSION**

For all of the foregoing reasons,[6] Plaintiff's motion for summary judgment is granted, Defendant's motion for summary judgment is denied, the decision of the Commissioner of the Social Security Administration is reversed, and the matter is remanded to the Administration for the immediate calculation and payment of benefits.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 16, 2012.

_____/S/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[6] The Court need not and does not reach any of the other issues raised by Plaintiff.